UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

DAVID MARCIONETTE,

    Plaintiff,

v.                    Case No.: 8:25-cv-3302-MSS-AEP

DIANA M. TENNIS, in her individual capacity,

ALAN APTE, in his individual capacity,

and ORANGE COUNTY, FLORIDA,

    Defendants.

_____/

## EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND IMMEDIATE INJUNCTIVE RELIEF

Plaintiff, DAVID MARCIONETTE, pursuant to Fed. R. Civ. P. 65(b), moves for an Emergency Temporary Restraining Order to prevent the imminent sale pursuant to orders that are void and constitutionally defective and distribution of his real property equity pursuant to state-court orders that are void ab initio.

The April 16, 2025 "Order Granting Appointment of Special Master" (**Ex. A**) was issued without notice, without a hearing, and in direct violation of Florida's procedural requirements governing the appointment and use of masters and magistrates. *See* Fla. R.

IFP

Civ. P. 1.490; Fla. Fam. L.R.P. 12.490–12.491 (requiring notice, service, and an opportunity to be heard before delegating judicial authority). Plaintiff was incarcerated at the time and received no constitutionally adequate notice or opportunity to appear or be heard, in violation of both Florida law and the Fourteenth Amendment. *See Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950).

Subsequently, Plaintiff filed a Notice of Appeal on May 12, 2025 **(Ex. B)**, thereby divesting the family court of all jurisdiction over the subject matter of the order appealed. *See* Fla. R. App. P. 9.130(f) ("the filing of a notice of appeal automatically stays further proceedings in the lower tribunal as to the order appealed"). Despite this divestiture, the trial judge entered substantive orders on May 27, 2025 **(Ex. C)** and September 2, 2025 **(Ex. D)** directing the forced sale, allocation, and distribution of Plaintiff's property interest. All such post-appeal orders are void ab initio, and their enforcement constitutes an ongoing deprivation of property without due process of law.

As grounds for this Emergency Motion, Plaintiff states:

## I. THE FEDERAL BASIS FOR RELIEF

1. This Court has jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts violations of his rights under the Fourteenth Amendment actionable under 42 U.S.C. § 1983.

## VENUE AND NON-TRANSFER REQUEST

2. Venue is proper in the Middle District of Florida, Tampa Division, because Plaintiff resides in Pasco County. Although the sale involved an Orange County property, divisional venue is not jurisdictional, and filing in the Tampa Division

avoids severe hardship because Movant is indigent without a vehicle and cannot travel to Orlando for ongoing litigation.

3. Plaintiff respectfully requests that the case not be transferred to the Orlando Division under 28 U.S.C. § 1404(a), because:

A. Divisional venue is not mandated by statute, and filing in Tampa is necessary to avoid the appearance of institutional entanglement with the Ninth Judicial Circuit, whose personnel, agencies, and institutional actors are directly involved in the events underlying this action. Because of the emergency nature of this action, the postal service from Hudson, FL to Tampa, FL is significantly faster.

B. Plaintiff does not allege actual bias by any judge or division; this request is made solely to preserve the integrity and neutrality of these proceedings and to prevent overlap with other Ninth Circuit matters involving the same governmental entities and actors. For these reasons, Plaintiff respectfully requests that this case remain in the Tampa Division and not be transferred under 28 U.S.C. § 1404(a).

4. The requested relief does not seek to undo, review, or alter any valid state-court judgment. Rather, Plaintiff seeks to restrain ongoing constitutional violations arising from the enforcement of void orders entered after divestiture of jurisdiction.

## II. FACTUAL BACKGROUND

5. On April 8, 2025, Plaintiff's former spouse, Jacqueline West (Marcionette), filed a motion requesting the appointment of a special master. Judge Diana M. Tennis promptly set the matter for hearing, providing Plaintiff with a clear expectation that the motion would be addressed through the required adversarial process.

6. However, on April 16, 2025, Judge Tennis abruptly cancelled the scheduled hearing and, on the very same day, entered the "Order Granting Appointment of Special Master" (Ex. A) without holding the hearing, without taking evidence, without allowing objections, and without providing Plaintiff—who was incarcerated—with any notice or opportunity to be heard. This sequence of

cancelling a duly noticed hearing and immediately granting the motion ex parte constitutes a direct violation of Florida Rules of Civil Procedure 1.490(c), Florida Family Law Rules 12.490–12.491, and the Fourteenth Amendment's requirement of notice and a meaningful opportunity to be heard.

7. Florida Rule of Appellate Procedure 9.130(f) provides that the filing of a Notice of Appeal "automatically stays further proceedings in the lower tribunal as to the order appealed." (emphasis added). Once the Notice of Appeal was filed, the family court judge lacked all jurisdiction to take further action on the subject matter of the appeal.

8. Despite this divestiture, Judge Diana M. Tennis entered substantive orders on May 27, 2025 and September 2, 2025 directing the sale, allocation, and distribution of Plaintiff's equity in the marital home—including granting the Special Master authority to act in Plaintiff's name—while Plaintiff was incarcerated.

9. Orders entered without jurisdiction are void ab initio, carry no legal effect, and their enforcement constitutes an ongoing deprivation of property without due process of law. Plaintiff does not ask this Court to review, vacate, or modify any final state-court judgment; he challenges only the ongoing enforcement of orders that are void for lack of jurisdiction and due process, which constitutes an independent federal injury under 42 U.S.C. § 1983.

10. Moreover, the foundational April 16, 2025 order (Ex. A) is independently void ab initio due to the trial court's failure to provide notice, a hearing, or any opportunity for Plaintiff to be heard before delegating core judicial authority to a Special Master to compel the sale of his property interest. Florida law mandates strict procedural safeguards for such delegations: Florida Rule of Civil Procedure 1.490(c) prohibits reference to a master "without notice to the parties and an opportunity to be heard," while Florida Family Law Rules of Procedure 12.490 and 12.491 require advance notice of the motion, proper service, and an evidentiary hearing to establish good cause before appointing a special master to exercise authority over litigants' property rights.

11. The April 16, 2025 order states: "The Motion for Appointment of Special Master has previously been GRANTED and all that is needed is to appoint that

individual. No hearing is needed for this." (Ex. A, ¶ 1.) This language is misleading because the *original* referral to a special master occurred in 2023 **without any hearing, without notice**, and **without providing Plaintiff an opportunity to be heard**, while he was incarcerated. As a result, the prior "granting" referenced in the April 16 order was itself procedurally defective and void under both Florida law and the Fourteenth Amendment. Any subsequent order that relies upon or implements that void referral is constitutionally defective and unenforceable.

12. The order's explicit declaration that "No hearing is needed" (**Ex. A, ¶ 1**) and its cancellation of a duly noticed April 23, 2025 hearing (**Ex. A, footer**) directly contravene these rules, rendering the appointment—and all subsequent actions predicated on it—likewise constitutionally defective and unenforceable under the Fourteenth Amendment's due process clause. *See Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306 (1950).

13. Former Judge Alan Apte was appointed as **Special Master at the rate of $500 per hour for all work performed and $250 per hour for travel,** as expressly stated in Judge Diana M. Tennis's appointment order. These **extraordinary rates** make the preservation of equity critical, yet the Special Master's actions are substantially eroding the co-owners' financial interests.

14. Plaintiff repeatedly objected to the appointment of any Special Master and to the exorbitant hourly rate. Under Florida Rule of Civil Procedure 1.490(c), a reference to a magistrate or master may be made **only with the consent of the parties**, and Florida Family Law Rule 12.490 requires advance notice, service of the motion, an opportunity to object, and **a duly noticed hearing before any judicial authority may be delegated**. None of these mandatory procedural safeguards were followed here, and Plaintiff's objections were never heard or adjudicated.

15. The Special Master is attempting to force a sale of Plaintiff's family home while the underlying order authorizing the sale is on direct appeal in the Sixth District Court of Appeal (6D2025-2453). Once the appeal was filed, jurisdiction immediately vested in the appellate court, and the trial court—and any appointed agents acting under its authority—lost all power to proceed with enforcement or sale. *See* Fla. R. App. P. 9.130(f); *Parker v. Parker,* 185 So. 3d 616 (Fla. 4th DCA 2016). The Special Master's actions are therefore ultra vires and void.

16. Only a few months ago, the former wife and the former wife's mother submitted a $225,000 confirmed offer for the home. That offer fell through solely because of a lien from a 2013 case—not due to any market decline. The Special Master abandoned that higher offer and is now attempting to complete a drastically undervalued sale at approximately $185,000, resulting in a $40,000 loss of equity to Respondent and his family. **(Ex. F and G are included to show the estimated market value of the house.)**

17. Most concerning, the Special Master has not listed the property, has conducted no open-market process, and is instead attempting to sell the home to a buyer he personally located, creating a substantial conflict of interest and collapsing any appearance of neutrality required of a court-appointed fiduciary. No reasonable fiduciary acting in good faith would reject a confirmed $225,025 offer only to pursue an unlisted, self-sourced $185,000 sale.

18. Plaintiff's co-owner and mother is 79 years old, living on a fixed income, and wholly dependent on the equity in her home. The Special Master's conduct—undervaluing the property by tens of thousands of dollars, bypassing the market, selecting his own buyer, and billing at rates of $500/hr plus $250/hr travel—constitutes financial exploitation of an elderly property owner and exposes her to severe, irreversible economic harm.

19. The combination of:
    - jurisdictional overreach during an active appeal,
    - significant undervaluation of the property,
    - self-sourced buyer involvement,
    - failure to list the home,
    - extreme billing rates, and
    - exploitation of a vulnerable 79-year-old co-owner

    creates a perfect storm of conduct that has the hallmarks of constructive fraud, breach of fiduciary duty, irreparable harm, and constitutional injury. Without immediate federal intervention, Plaintiff, his elderly mother, and the former wife will permanently lose irreplaceable equity, and the sale will become impossible to unwind.

## III. IMMEDIATE & IRREPARABLE HARM EXISTS

The sale of Plaintiff's home (the marital residence at 5131 Rebecca Court, Orlando, FL 32810) is scheduled to close on December 4, 2025. Once the sale occurs, Plaintiff's equity **(formerly estimated at approximately $54,000 (Ex. C ¶ 3)** will be irretrievably lost, distributed to third parties, and rendered impossible to restore through later remedies.

17. This constitutes irreparable harm under Rule 65:
    - real property is unique;
    - once sold, it cannot be recovered;
    - monetary damages cannot unwind a void transfer of title; and
    - Plaintiff will be unable to reconstruct his ownership interest.

18. Plaintiff, recently released from incarceration on October 22, 2025, still faces barriers to immediate access and resources to intervene effectively in the sale process. He was never afforded a meaningful opportunity to be heard by the Special Master on the orders compelling the sale, and the orders themselves were issued without jurisdiction.

19. The threatened harm is not speculative—it is imminent (closing in just days) and unavoidable unless this Court intervenes.

## IV. ARGUMENT

### A. The April 16, 2025 Order Was Void Ab Initio Because It Was Entered Without Notice and Without the Hearing Required Under Florida Law.

21. The April 16, 2025 "Order Granting Appointment of Special Master" (Ex. A) is void from its inception because it was entered without the procedural safeguards required by both Florida law and the United States Constitution. Florida strictly regulates the use and appointment of special masters, general magistrates, and hearing officers. *See* Fla. R. Civ. P. 1.490; Fla. Fam. L.R.P. 12.490–12.491. These rules require: (1) advance notice of the requested referral; (2) service of the motion; (3) an opportunity to be heard; and (4) an opportunity to object before judicial authority may be delegated to a master.

22. Fla. R. Civ. P. 1.490 requires consent of the parties before any referral to a magistrate (subdivision (c)), and once referred, mandates notice and a hearing before the magistrate acts (subdivision (f)). Because none of those prerequisites occurred, the appointment of the special master was procedurally invalid.

23. Fla. Fam. L.R.P. 12.490(b) requires a properly noticed motion and referral order before any authority may be delegated, and subdivisions (d)–(f) require a duly noticed hearing before the magistrate acts. The April 16 order provided no notice, no motion was served, no hearing was held, and Plaintiff—then incarcerated—had no opportunity to object. The delegation was therefore void ab initio.

24. None of these required procedural steps occurred. Plaintiff was incarcerated and was provided no notice, no hearing, no service, no opportunity to be heard, and no ability to object.

25. Because the April 16 order was entered without mandatory due-process procedures, it is void ab initio. *See Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306 (1950) (orders entered without notice and opportunity to be heard violate the Fourteenth Amendment). Florida law is equally clear: an order issued without required notice or hearing is void and unenforceable.

26. Because the April 16 order is void, all subsequent actions taken under its authority were constitutionally defective from their inception.

## B. The May 12, 2025 Notice of Appeal Automatically Divested the Trial Court of Jurisdiction, Rendering All Later Orders Void Under Florida Rule 9.130(f).

27. Even if the April 16 order had been valid (it was not), Plaintiff filed a Notice of Appeal on May 12, 2025 (Ex. D). Under Florida Rule of Appellate Procedure 9.130(f): "the filing of a notice of appeal automatically stays further proceedings in the lower tribunal as to the order appealed." This divestiture is immediate, automatic, and jurisdictional. Once the notice was filed, the family court lacked all authority to take any further substantive action regarding the subject matter of the appealed order—including the sale of Plaintiff's property, the delegation of

signing authority, or the distribution of proceeds.

28. Despite this jurisdictional bar, the court entered substantive orders on May 27, 2025 (Ex. B) and September 2, 2025 (Ex. C) directing: (1) the compelled sale of the home, (2) the delegation of signing authority to Special Master Apte, (3) the allocation and distribution of Plaintiff's equity, and (4) the execution of closing instructions.

29. *See Bailey v. Bailey,* 392 So. 2d 49 (Fla. 3d DCA 1981) (The court held that "the order awarding attorneys' fees and costs to Appellee was void because the trial court was without jurisdiction to enter such an order while Appellant's initial appeal was pending in the appellate court").

30. Because the May 27 and September 2 orders affect the same subject matter—forced sale, delegation of authority, and distribution of equity—they fall squarely within the scope of the Notice of Appeal and are therefore automatically stayed under Rule 9.130(f).

31. Florida courts consistently hold that orders entered after jurisdiction has been lost are void. Therefore, even setting aside the due-process defects in the April 16 order, the May 27 order is void for a second, independent reason: the order was entered after divestiture.

32. The September 2 order does not independently adjudicate any issue, other than awarding all of the Plaintiff's equity to the wife, without a proper recalculation of the equitable distribution worksheet. This comes despite competent substantial evidence being presented that the equitable distribution worksheet did not contain all of the marital assets and debts.

33. The September 2 order rests entirely on the April 16 appointment and the May 27 delegation—both of which were void from inception. Therefore, the September 2 order is void for the separate and independent reason that it enforces prior void orders, and it cannot lawfully authorize the sale or distribution of Plaintiff's property.

34. A void order is a nullity from inception and cannot serve as the basis for any subsequent judicial action; therefore, every order that relies upon the void April 16 or post-divestiture May 27 orders is likewise void, including the September 2, 2025 distribution order.

### C. Enforcement of Void Orders Constitutes an Ongoing Violation of Plaintiff's Fourteenth Amendment Rights and Justifies Immediate Temporary Relief.

36. The imminent closing of the property on December 4, 2025—based solely on orders that are void for both (1) due-process violations and (2) lack of jurisdiction—poses an immediate and irreparable threat. Once the sale closes and the equity is distributed, the status quo cannot be restored. This creates an irreparable deprivation of a constitutionally protected property interest. *See Fuentes v. Shevin,* 407 U.S. 67 (1972).

37. Plaintiff has shown a substantial likelihood of success on the merits, the imminent injury is irreparable, the balance of equities favors preserving the status quo, and the public interest strongly supports preventing the execution of void judicial orders.

38. Federal Rule of Civil Procedure 65(b) therefore authorizes this Court to enter a Temporary Restraining Order to prevent the unlawful transfer of Plaintiff's property.

39. There is no adequate opportunity in the state courts to obtain timely relief from these constitutional violations before the December 4, 2025 closing, and the challenged orders were entered in clear absence of jurisdiction and without notice or a hearing. Under these circumstances, abstention is inappropriate, and federal intervention is necessary to prevent irreparable loss of Plaintiff's property and due process rights.

## V. BALANCE OF EQUITIES FAVORS PLAINTIFF

Defendants suffer no harm from a short-term freeze preventing the enforcement of orders that were unlawful from inception.

40. Plaintiff faces total loss of constitutional rights and real property absent immediate relief.

## VI. THE PUBLIC INTEREST SUPPORTS INJUNCTION

42. The public has a compelling interest in:
    - courts acting within lawful jurisdiction,
    - preventing enforcement of void orders, and
    - ensuring due process for all litigants.

## VII. REQUESTED TEMPORARY RESTRAINING ORDER

Plaintiff respectfully requests the Court enter a TRO:

A. **Restraining the Special Master (Alan Apte), Orange County, any title company or closing agent, and all parties or agents acting in concert with them from selling**, transferring, conveying, disbursing, or otherwise disposing of the real property located at 5131 Rebecca Court, Orlando, Florida 32810, or Plaintiff's equity therein, including any escrowed proceeds or Plaintiff's equity therein, including any escrowed proceeds held by the closing agent, pending further order of this Court or unwind any distributions if closed prematurely.

B. **Ordering the immediate pause of all closing activities**, disbursements, title transfers, payouts, or escrow instructions related to the real property located at 5131

Rebecca Court, Orlando, Florida 32810, including any escrowed proceeds held by the closing agent, pending further order of this Court or unwind any distributions if closed prematurely.

C. **Directing Defendants to maintain the status quo until the Court rules on a forthcoming motion for preliminary injunction**, for a period not to exceed 14 days.

D. **To the extent the closing has occurred, Plaintiff requests that the Court freeze all proceeds, restrain any further transfer of title, and preserve all rights to unwind the closing and restore the property interest pending further order of the Court.**

## VIII. RULE 65(b)(1) CERTIFICATION

43. Plaintiff certifies that notice to Defendants is impracticable because the closing is scheduled for December 4, 2025, and delaying this filing to provide advance notice would allow the very harm (sale and distribution) this TRO seeks to prevent. Defendants were previously served via the state-court docket (e.g., Ex. B & C certificates of service to Apte), but the urgency precludes further delay.

**WHEREFORE,** Plaintiff respectfully asks this Court to enter a Temporary Restraining Order consistent with the above, without security (waived due to indigency under 28 U.S.C. § 1915), and set an expedited hearing on preliminary injunction within 14 days.

44. Plaintiff further states that he did not receive any notice of a proposed listing, contract, negotiation, or pending sale of the marital residence, and first learned of the purported December 4, 2025 closing in the evening hours of November 28, 2025. **Since the appointment of the Special Master, the Plaintiff has had no contact with the Special Master,** the property has never been listed for sale with any licensed real-estate broker, despite the explicit requirements of the **Partial Marital Settlement Agreement (Ex. G).** Plaintiff was never consulted, never provided an opportunity to review or approve any contract, and never consented to

to review or approve any contract, and never consented to the sale. **To the best of Plaintiff's knowledge, the co-owner and former spouse was likewise unaware of any contract or closing date, and retains substantial personal property still inside the residence.** These facts show that the proposed sale is occurring without notice, without compliance with the governing agreement, without jurisdiction, and that allowing the closing to proceed would cause immediate and irreparable harm.

45. These issues are currently under review in the Sixth District Court of Appeal in Case No. 6D2025-2453, and neither the trial court nor the Special Master retain jurisdiction to authorize or complete this sale while the appeal is pending.

46. Plaintiff makes no criminal allegations in this civil action; however, the conduct described herein—including acting without jurisdiction, enforcing void orders, and knowingly depriving constitutional rights—may independently warrant review by appropriate governmental authorities. Plaintiff respectfully leaves that determination to this Court and to those authorities.

47. This Court is in the best position to determine whether the documented pattern of jurisdictional disregard documented herein by state actors exceeds the boundaries of civil liability and implicates duties of referral under federal law.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing will be served by

U.S. Mail **immediately after filing** upon the following parties:

> Hon. Diana M. Tennis
> c/o Ninth Judicial Circuit Court
> 425 N. Orange Avenue
> Orlando, Florida 32801

> Alan S. Apte
> Mediate First, Inc.
> 200 E. Robinson Street, Suite 700
> Orlando, Florida 32801

Orange County Attorney's Office
201 S. Rosalind Avenue, 3rd Floor
Orlando, Florida 32801

Any additional parties, closing agents, or entities involved in the scheduled December 4, 2025 sale will also be served by mail immediately following the filing of this motion.

Respectfully submitted,

/s/ David Marcionette

David Marcionette
Plaintiff, pro se

(407) 627-7334
7210 Southwind Dr.
Hudson, FL 34667

dmarcionette@msn.com